UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Francisco S., | File No. 26-cv-1455 (ECT/DTS) |
| Petitioner, | |
| v. | **OPINION AND ORDER** |
| Pamela Bondi, *Attorney General*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; and David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*, | |
| Respondents. | |

Claire Glenn, Climate Defense Project, Minneapolis, MN, for Petitioner Francisco S.

Friedrich A.P. Siekert and David W. Fuller, United States Attorney's Office, Minneapolis, MN, for Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, and David Easterwood.

Petitioner Francisco S. is a Venezuelan citizen who has "lived in the United States since June 2022," Pet. [ECF No. 1] ¶ 12, when he entered the country without inspection, *see* ECF No. 6-2 at 1. "Upon entry into the United States, [Francisco] made a timely claim for asylum, which is currently pending in immigration court." Pet. ¶ 13. Francisco "has never received any final order of removal." *Id.* Francisco "has a work permit." *Id.* ¶ 14.[1]

---

[1]   Respondents have provided Francisco's Notice to Appear and Form I-213, ECF Nos. 6-1, 6-2, but these documents provide conflicting accounts of Francisco's immigration status. Specifically, the Notice to Appear states that when Francisco "entered the United States at or near Eagle Pass, [Texas], on or about June 17, 2022," Francisco was "*not then*

On December 14, 2025, Francisco was "dropping off an Uber passenger" in St. Paul, Minnesota, when he was arrested by "masked individuals dressed in black, presumed to be [Immigration and Customs Enforcement] agents," as part of "Operation Metro Surge." *Id.* ¶¶ 16, 20. "The arresting agents did not ask [Francisco] for any identification or information, nor did they produce a warrant." *Id.* ¶ 17. According to the Petition, the arresting agents did not "appear to have any reasonable suspicion or probable cause of criminal activity to justify [Francisco's] detention." *Id.* The Petition further alleges, "[u]pon information and belief," that "after [Francisco's] arrest, Respondents brought him to a detention facility within the District of Minnesota." *Id.* ¶ 18. "As of approximately 11:24 A.M. on February 16, 2026, the ICE online detainee locator show[ed] [Francisco's] location only as 'Call ICE For Details,' without providing any further information." *Id.* ¶ 19 (including screenshot).

As a preliminary matter, Respondents assert that jurisdiction is lacking because Francisco was detained in Wisconsin at the time of the Petition's filing. ECF No. 5 at 1–3. Respondents assert, without citation to any record evidence, that "ICE transferred [Francisco] to a facility in Superior, Wisconsin," the day after he was arrested, thus depriving this Court of jurisdiction over Francisco's Petition. *See id.* at 1–2. Respondents maintain that "[t]he judicial district encompassing where [Francisco] *is detained* is United

---

*admitted or paroled after inspection* by an Immigration Officer." ECF No. 6-2 at 1 (emphasis added). The Form I-213, on the other hand, states that "[o]n 06/17/2022, U.S. Border Patrol arrested [Francisco] and *granted him parole* into the United States." ECF No. 6-1 at 2 (emphasis added). But this same document also states that the "BASIS FOR ICE CHARGES" is that Francisco is "an alien present in the United States *without being admitted or paroled*." *Id.* at 2–3 (emphasis added). I cannot reconcile these conflicting statements.

States District Court for the Western District of Wisconsin." *Id.* at 2 (emphasis added). However, since at least February 19, 2026 (the day after Respondents' answer was filed), the Court's review of the ICE Detainee Locator revealed Francisco's "Current Detention Facility" as the "Sherburne County Facility" in Minnesota:



*See Online Detainee Locator System*, U.S. Immigr. & Customs Enf't, www.locator.ice.gov/odls/#/search (last visited Feb. 20, 2026). The Detainee Locator System's placement of Francisco in Sherburne County, Minnesota, on the day after Respondents' answer was filed leads me to question Respondents' undocumented assertion that Francisco "is"—or perhaps ever was—detained in Wisconsin. Accordingly, Respondents' arguments about this Court's lack of jurisdiction over Francisco's petition will be rejected.

Turn to the merits. Francisco challenges his detention under 28 U.S.C. § 2241. Pet. ¶ 2. He claims he has been wrongly classified as an 8 U.S.C. § 1225(b)(2) detainee (whose detention is mandatory) rather than an 8 U.S.C. § 1226(a) detainee (whose detention is discretionary and who is entitled to a bond hearing). Pet. ¶¶ 35–37; *see Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 961–62 (D. Minn. 2025) (explaining legal framework). According to Francisco, that misclassification and denial of a bond hearing

violate his right to due process under the Fifth Amendment, the Immigration and Nationality Act, and the Administrative Procedure Act. *See* Pet. ¶¶ 38–54. Francisco seeks his immediate release in Minnesota, without conditions; that he be released with conditions to ensure his safety, including advance notice to counsel and the return of his personal effects; issuance of an order enjoining his transfer from this District during the pendency of his Petition; that this Court retain jurisdiction to retain any future motion for attorneys' fees and costs; and "any other and further relief that this Court may deem just and proper." *See id.* at 18–19.

Recognizing that "[t]his case presents similar legal and factual issues to prior habeas petitions," Respondents argue that Francisco is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *See* ECF No. 5 at 4. This raises an issue of statutory interpretation[2] that courts in this District have repeatedly considered and rejected, and it will be rejected here as well.

Francisco has shown he has been misclassified under § 1225(b)(2) rather than § 1226(a). As courts have explained, the former statute applies to applicants "seeking admission," and the latter to "aliens already in the country." 8 U.S.C. § 1225(b)(2)(A); *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (construing 8 U.S.C. § 1226(a) and (c)); *see Francisco T. v. Bondi*, 797 F. Supp. 3d 970, 974–76 (D. Minn. 2025); *Belsai D.S. v.*

---

[2] To the extent Respondents challenge this Court's subject-matter jurisdiction to consider Francisco's Petition, consistent with previous rulings on this issue, I find that the jurisdiction-stripping provisions of § 1252(a)(5), (b)(9), and (g) do not apply to "the narrow question whether a noncitizen is subject to discretionary detention under 8 U.S.C. § 1226 or mandatory detention under § 1225(b)(2)." *Fernando F.P.D. v. Brott*, No. 25-cv-4455 (ECT/ECW), 2025 WL 3675151, at *2 (D. Minn. Dec. 17, 2025) (citing cases).

4

*Bondi*, --- F. Supp. 3d ---, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *6–7 (D. Minn. Oct. 1, 2025); *Eliseo A.A. v. Olson*, --- F. Supp. 3d ---, No. 25-cv-3381 (JWB/DJF), 2025 WL 2886729, at *2–4 (D. Minn. Oct. 8, 2025); *Avila v. Bondi*, No. 25-cv-3741 (JRT/SGE), 2025 WL 2976539, at *5–7 (D. Minn. Oct. 21, 2025), *appeal filed*, No. 25-3248 (8th Cir. Nov. 10, 2025); *Andres R.E. v. Bondi*, No. 25-cv-3946 (NEB/DLM), 2025 WL 3146312, at *2–3 (D. Minn. Nov. 4, 2025); *E.M. v. Noem*, 25-cv-3975 (SRN/DTS), 2025 WL 3157839, at *4–8 (D. Minn. Nov. 12, 2025); *Santos M.C. v. Olson*, No. 25-cv-4264 (PJS/DJF), 2025 WL 3281787, at *2–3 (D. Minn. Nov. 25, 2025).  As of this writing, two federal courts of appeals have ruled on the question, one reaching and one rejecting this conclusion.  *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (concluding that respondent was not likely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)); *Buenrostro-Mendez v. Bondi*, --- F.4th ---, Nos. 25-20496, 25-40701, 2026 WL 323330, at *1 (5th Cir. Feb. 6, 2026) (finding petitioner was subject to mandatory detention under § 1225(b)(2)).  Francisco has lived in the United States for more than three years, Pet. ¶ 12, and I find his detention falls under § 1226(a) and not § 1225(b)(2).[3]

The final issue is the appropriate remedy.  Section 1226 provides that "*[o]n a warrant issued by the Attorney General*, an alien may be arrested and detained." 8 U.S.C. § 1226(a) (emphasis added).  "Issuance of a warrant is a necessary condition to

---

[3]   Respondents do not argue that Francisco is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c), or that any other statutory scheme other than that raised in the Petition would apply to Francisco's detention.  *See* ECF No. 5.

5

justify discretionary detention under section 1226(a)." *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025), *appeal filed* (Nov. 6, 2025). "[I]t follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Id.* (emphasis in original); *accord Chiliquinga Yumbillo v. Stamper*, No. 2:25-cv-00479, 2025 WL 2783642, at *5 (D. Me. Sep. 30, 2025); *J.A.C.P. v. Wofford*, No. 1:25-cv-01354, 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025); *see also Florida v. United States*, 660 F. Supp. 3d 1239, 1276 (N.D. Fla. 2023) (stating § 1226 "is not even triggered unless an arrest warrant is issued" and that "[i]f [an] alien has not been arrested on a warrant, then the subsequent provisions giving the Attorney General discretion to detain or release 'the arrested alien' are likewise not triggered"), *appeal dismissed*, 2023 WL 5212561 (11th Cir. July 11, 2023). Francisco alleges that he was arrested without a warrant. *See* Pet. ¶ 17.

Respondents' arguments regarding a warrant (or lack thereof) do not establish a lawful basis for Francisco's arrest. *See* ECF No. 5 at 13–14. (1) Respondents state that "Respondents did have a warrant for [Francisco's] arrest, but as noted in the [Form I-213], they did not have time to obtain a warrant while [Francisco] attempted to flee and resisted arrest." *Id.* at 13 (citing ECF No. 6-1). To the extent Respondents argue that a warrant for Francisco's arrest existed, no such warrant has been provided to the Court. Moreover, the Form I-213 provided with Respondents' Answer contradicts the existence of a warrant, stating that Francisco was the subject of a "warrantless arrest." ECF No. 6-1 at 2. (2) Respondents cite 8 U.S.C. § 1357 for the authority of immigration officers to make warrantless arrests, but they do not explain which of § 1357's exceptions to the warrant requirement would apply to Francisco's circumstances. *See* ECF No. 5 at 14. Based on

6

Respondents' limited argument and the Form I-213's statements that Francisco fled once stopped, ECF No. 6-1 at 2, Respondents are perhaps referring to 8 U.S.C. §1357(a)(2). That provision allows for warrantless arrests "if [the officer] has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." However, we do not have sufficient facts to apply that exception. The provided Form I-213 states that "[o]n December 14, 2025, ERO initiated an investigatory vehicle stop on an individual known to ICE as [Francisco]." ECF No. 6-1 at 2. Absent any declaration testimony from the arresting officer, I cannot ascertain how this statement would support the arresting officer's reasonable belief that Francisco was in the United States in violation of an immigration law or regulation prior to his arrest. For instance, there is no indication of the basis for the "investigatory stop," such as an officer's identification of Francisco's vehicle or person. The Form I-213 also indicates that officers conducted "[i]mmigration checks," but the statement's chronology indicates that these checks occurred *after* Francisco was already arrested. *See id.* On these facts and limited argument, I cannot determine that one of § 1357 exceptions to the warrant requirement applies. (3) Respondents do not explain how the cases they cite apply in the face of 8 U.S.C. § 1226(a), which requires "a warrant issued by the Attorney General" as a predicate to discretionary detention under § 1226(a). *See* ECF No. 5 at 14 (first citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984); and then citing *Arias v. Rogers*, 676 F.2d 1139, 1142 (7th Cir. 1982)). For these reasons, I find Respondents' arguments regarding the warrant, or its absence, unpersuasive.

"[R]elease is an available and appropriate remedy" for "detention that lacks a lawful predicate." *Vedat C. v. Bondi*, No. 25-cv-4642 (JWB/DTS), slip op. at 6 (D. Minn. Dec. 19, 2025) (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). "Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings." *Id.*; *see Chogllo Chafla*, 804 F. Supp. 3d at 264 ("Since the Government did not comply with the plain language of section 1226(a), [petitioners'] immediate release is justified."); *J.A.C.P.*, 2025 WL 3013328, at *8 (same); *Chiliquinga Yumbillo*, 2025 WL 2783642, at *5 (reaching same conclusion); *see also Munaf*, 553 U.S. at 693 ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." (citation modified)).[4]

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Petitioner Francisco S.'s Verified Petition for Writ of Habeas Corpus [ECF No. 1] is **GRANTED** as follows:

1. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and is instead subject to detention, if at all, pursuant to the discretionary provisions of 8 U.S.C. § 1226.

---

[4] The resolution of this statutory-interpretation question in Francisco's favor makes it unnecessary to address the Petition's remaining grounds.

    2.    Respondents shall release Petitioner from custody as follows:

        a.    If Petitioner remains detained in Minnesota, Respondents shall release Petitioner from custody as soon as practicable, but not later than 48 hours after entry of this Order.

        b.    If Petitioner has been moved outside of Minnesota, as soon as practicable, but not later than 72 hours after entry of this Order, Respondents shall return Petitioner to Minnesota and then release Petitioner from custody.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  February 20, 2026, at 7:40 p.m.        s/ Eric C. Tostrud
                                                                Eric C. Tostrud
                                                                 United States District Court